UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| USFL ENTERPRISES, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>503 SPORTS LLC and DUSTIN<br>ALAMEDA,<br><br>                    Defendants. | No. 23-cv-6482<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff USFL Enterprises, LLC ("USFL Enterprises" or "Plaintiff"), by and through its attorneys Ellis George Cipollone O'Brien LLP, as and for its complaint against Defendants 503 Sports LLC ("503 Sports") and Dustin Alameda ("Alameda") (together, "Defendants"), alleges as follows:

### NATURE AND BASIS OF THE ACTION

1.      USFL Enterprises brings this action to stop Defendants' rampant trademark infringement and counterfeiting of Plaintiff's registered and common law trademarks relating to the United States Football League and its constituent teams.

2.      USFL Enterprises owns the United States Football League (the "New USFL") and its constituent teams.  The New USFL is a professional football league announced in 2021 and launched in 2022 to bring back spring football.  It harkens back to the original United States Football League that played three seasons of spring football from 1983 to 1986 (the "Old USFL").  Due to a long, intense effort by Plaintiff, the New USFL is now in its second season, it boasts eight teams, and it has over 300 players.  It has succeeded largely because of the substantial investment of time and money that Plaintiff has made.

3.      Part of the investment Plaintiff made in establishing the New USFL was ensuring that it secured rights to the trademarks for the league name and logos and for the constituent team names and logos—including by acquiring rights from former owners and executives involved in the Old USFL from the 1980s and its teams.

4.      Defendant 503 Sports and its sole member and president, Defendant Dustin Alameda, are brazenly attempting to capitalize on the goodwill that Plaintiff and its predecessors created in the USFL-related trademarks by selling apparel adorned with trademarks owned by Plaintiff, including the league name, team names, and logos for both the league and teams.  Worse, Defendants are deceiving customers into thinking that these knockoff goods are associated with— or officially sanctioned by—the New USFL and its teams.

5.      Defendants operate an e-commerce website, http://www.royalretros.com/ ("Defendants' Website") selling apparel bearing the "USFL" wordmark and design mark along with the wordmarks and design marks of teams that participated in the Old USFL and/or participate in the New USFL—all of which Plaintiff owns.  To further create a false association with the New USFL, Defendants have presented their goods as part of a "USFL by Royal Retros Brand" and refer to their products as "official merchandise of the USFL Royal Retros Brand," as if they were official licensees of Plaintiff, its league, and its marks.  Defendants further attempt to create a false association with the New USFL by asserting that their site is "***Where the players shop!***"  The only "players," of course, are the players in Plaintiff's New USFL and Defendants are deliberately— and falsely—suggesting to consumers that they have some official connection to the New USFL to sell their goods.

6.      Defendants are not and have never been Plaintiff's licensees, nor have they ever had any rights in the wordmarks, logos, or other intellectual property associated with either the Old USFL or the New USFL.

7.      Plaintiff brings this action to stop Defendants from engaging in deceptive and unlawful business practices, to protect its own intellectual property in the league and team marks, and to ensure that fans of the New USFL are not confused and misled into purchasing the unlicensed, counterfeit goods marketed and sold by Defendants.

## PARTIES

8.      USFL Enterprises is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 10201 West Pico Boulevard, Los Angeles, California 90064 and is registered to do business in the State of New York.  USFL Enterprises is an indirect subsidiary of Fox Corporation.

9.      503 Sports is a limited liability company organized under the laws of the state of Texas with its principal place of business located at 13809 Research Blvd., Austin, Texas 78750.

10.     Alameda is a natural person who, on information and belief, is domiciled in Fort Worth, Texas and/or Lake Oswego, Oregon and is the sole member and President of 503 Sports. Alameda, as the sole corporate officer and employee of 503 Sports, has personally authorized, directed, and benefitted from the specific acts of infringement set forth here.

## JURISDICTION AND VENUE

11.     This action arises out of violations of the United States Trademark Act (the "Lanham Act") 15 U.S.C. § 1051, et seq., and subject matter jurisdiction is therefore conferred upon this Court by 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to trademarks or copyrights).

12.     Supplemental jurisdiction over the related state law claims is conferred upon this Court by 28 U.S.C. § 1367 and 28 U.S.C. § 1338(b).

13.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants have: (i) deliberately created confusion among the New USFL's existing and potential customers, many of whom reside in this judicial district, and knowingly caused significant harm to the New USFL's reputation, goodwill, and trademarks in this judicial district; (ii) regularly solicited business from customers in New York via Defendant's Website, and/or (iii) derived substantial revenue from goods sold to customers in New York.

14.     Upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district in that: (i) substantial sales of 503 Sports' products are placed online via customers located in New York, and/or (ii) Defendants have intentionally targeted their acts of infringement and deception towards New York.  Venue is therefore proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

## FACTUAL ALLEGATIONS

### The New USFL

15.     On June 3, 2021, Plaintiff announced the creation of a new professional football league under the name "United States Football League" to play spring football and to revive the legacy of the Old USFL that had played in the 1980s.  The announcement of the New USFL generated widespread public excitement with continuous national and international media coverage concerning its development and highly anticipated first season of play scheduled to kick-off in April 2022.

16.     Plaintiff entered into a high-profile, multi-year media deal for television broadcasts of the New USFL games and contracts with stadiums to field the games.

17.     The New USFL includes eight teams scheduled to play a regular season of ten games from April to July of each year, with a semifinal playoff and championship games scheduled for late June to early July.  Each of the New USFL's teams is based on a team of a similar name that played in the Old USFL in the 1980s.

18.     During its first season of play in 2022, the New USFL generated interest nationally via television audiences that averaged nearly 700,000 viewers, and locally in Birmingham, Alabama (where it played all of its games in 2022).  This interest translated into substantial sales of USFL goods both to consumers nationally that are interested in professional football, and locally for those fans attending games.

19.     Today, the New USFL has just finished its second season of play, which began on April 15, 2023, and concluded with a nationally televised championship game over the July 4th holiday weekend.

**USFL Enterprises' Trademark Rights**

20.     As part of establishing the New USFL, Plaintiff secured trademark rights for various marks related to the USFL, including the wordmarks "USFL" and "United States Football League," and for the USFL league logo, and for the team names and team logos of the league's constituent teams.

21.     Plaintiff's trademark rights come from both registered trademarks related to the USFL and also common law trademark rights acquired from owners and executives of the Old USFL.

22.     Through acquisitions, Plaintiff now owns multiple U.S. trademark registrations for the USFL and UNITED STATES FOOTBALL LEAGUE word marks for a variety of goods and services, including as relevant here, in International Class 25 for apparel goods (including beanies; hats; pants; sweatshirts; T-shirts; athletic apparel, namely, shirts, pants, jackets, hats and caps,

athletic uniforms; baseball caps and hats; head wear; hooded sweatshirts; jackets; jerseys; knitted

caps; long-sleeved shirts; polo shirts; shirts and short-sleeved shirts; sports caps and hats; warm

up suits), with priority dating back to December 2011.  These registered marks are listed in the

table below:

| Mark | Appl. or Reg. No. | Filing Date | Reg. Date | First Use in Commerce | Goods Covered by the Application / Registration |
|------|------|------|------|------|------|
| USFL | 4,165,542 | March 24, 2011 | June 26, 2012 | Dec. 31, 2011 | IC 025. US 022, 039. G & S: Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Hats; Headwear; Jackets; Pants; Shirts; Shorts; Socks; Sports jerseys; Sweatshirts; Undergarments; Warm up outfits. |
| USFL | 4,808,689 | March 24, 2011 | Sept. 8, 2015 | Aug. 1, 2014 | IC 041. US 100, 101, 107. G & S: [Entertainment in the nature of football games;] Organization of sports events in the field of football. |
| USFL | 7,081,266 | Jan. 21, 2021 | June 13, 2023 | Dec. 31, 2011 | IC 025. US 022, 039. G & S: Headwear; Bottoms as clothing; Tops as clothing. |

| Mark | Appl. or Reg. No. | Filing Date | Reg. Date | First Use in Commerce | Goods Covered by the Application / Registration |
|------|-------------------|-------------|-----------|----------------------|------------------------------------------------|
| USFL | 7,081,686 | April 7, 2021 | June 13, 2023 | Dec. 31, 2011 | IC 025. US 022, 039. G & S: Beanies; Hats; Sweatshirts; T-shirts; Athletic apparel, namely, shirts, jackets, hats and caps, athletic uniforms; Baseball caps and hats; Hooded sweatshirts; Jackets; Jerseys; Knitted caps; Long-sleeved shirts; Shirts and short-sleeved shirts; Sports caps and hats. |
| UNITED STATES FOOTBALL LEAGUE | 6,774,782 | April 8, 2021 | June 28, 2023 | Jan. 31, 2022 | IC 025. US 022 039. G & S: Beanies; Hats; Sweatshirts; T-shirts; Athletic apparel, namely, shirts, hats and caps; Baseball caps and hats; Head wear; Hooded sweatshirts; Knitted caps; Long-sleeved shirts; Shirts and short-sleeved shirts; Sports caps and hats. |

23.     Registration No. 4,165,542, was applied for on March 24, 2011 and registered on June 26, 2012.  Accordingly, that registration for the word mark "USFL" is incontestable under 15 U.S.C. § 1065, and has a priority date of March 24, 2011.

24.     Registration No. 4,808,689, was applied for on March 24, 2011 and registered on September 8, 2015.

25.     Plaintiff also owns registered trademarks for the USFL logo, including, as relevant here, in International Class 25 for apparel.  These registrations are shown in the table below:

| Mark | Appl. or Reg. No. | Filing Date | Reg. Date | First Use in Commerce | Goods Covered by the Application / Registration |
|---|---|---|---|---|---|
|  | 7,081,696 | June 1, 2021 | June 13, 2023 | Dec. 31, 2011 | IC 025. US 022 039. G & S: Beanies; hats; pants; sweatshirts; T-shirts; athletic apparel, namely, shirts, pants, jackets, hats and caps, athletic uniforms; baseball caps and hats; head wear; jackets; jerseys; polo shirts; hooded sweatshirts; knitted caps; long-sleeved shirts; shirts and short-sleeved shirts; sports caps and hats; warm up suits. |
|  | 7,081,693 | April 7, 2021 | June 13, 2023 | Dec. 31, 2011 | IC 025. US 022 039. G & S: Beanies; hats; pants; sweatshirts; T-shirts; athletic apparel, namely, shirts, pants, jackets, hats and caps, athletic uniforms; baseball caps and hats; head wear; hooded sweatshirts; jackets; jerseys; knitted caps; long-sleeved shirts; polo shirts; shirts and short-sleeved shirts; sports caps and hats; warm up suits. |

26.    Plaintiff also owns registered word marks for the team names for the Birmingham Stallions, the Memphis Showboats, and the New Orleans Breakers, including in, as relevant here, in International Class 25 for apparel goods:

| Mark | Appl. or Reg. No. | Filing Date | Reg. Date | First Use in Commerce | Goods Covered by the Application / Registration |
|---|---|---|---|---|---|
| BIRMINGHAM STALLIONS | 7,076,162 | June 2, 2021 | June 6, 2023 | Dec. 31, 2011 | IC 025. US 022 039. G & S: Headwear; Bottoms as clothing; Tops as clothing.<br><br>IC 041. US 100 101 107. G & S: Entertainment in the nature of football games; Organisation of sports events in the field of football; Organization of sports competitions; Organizing and arranging exhibitions for entertainment purposes. |
| MEMPHIS SHOWBOATS | 7,075,895 | Jan. 21, 2021 | June 6, 2023 | Dec. 31, 2011 | IC 025. US 022 039. G & S: Headwear; Bottoms as clothing; Tops as clothing. |
| NEW ORLEANS BREAKERS | 7,081,265 | Jan. 21, 2021 | June 13, 2023 | Feb. 24, 2022 | IC 025. US 022 039. G & S: Headwear; Bottoms as clothing; Tops as clothing. |

27.    In addition to registered trademarks, Plaintiff acquired common law trademark rights from former owners and executives of the Old USFL (collectively the "Old USFL Rightsholders").  As explained below, Plaintiff acquired common law trademark rights for the word marks for "USFL" and "United States Football League," for the USFL logo, for the word marks for the league's constituent teams, and for the logos for the teams used by the Old USFL (the "Heritage Team Marks").

28.    The Old USFL Rightsholders acted initially through their appointed representative, former Old USFL executive Steve Ehrhart, and later through an entity named The Real USFL, LLC, to which they assigned all their intellectual property rights related to the Old USFL.

29.     When the Old USFL disbanded in the 1980s, league executives and the owners of its former franchises elected an individual, Steve Ehrhart ("Ehrhart"), to preserve the name and legacy of the league.

30.     Ehrhart preserved the goodwill of the Old USFL by using the league and team trademarks in commerce.

31.     Most relevant to this action, Ehrhart entered into a July 2011 licensing agreement with clothing manufacturer and distributor American Classics, Inc. ("American Classics") to produce and distribute t-shirts featuring league and team word marks, the league logo and logos from the teams of the Old USFL (the "American Classics License Agreement").

32.     The American Classics License Agreement granted American Classics a worldwide license for the right to use "[t]he names, logos, and images of the USFL and its member teams from 1983, 1984, and 1985," on "Tshirts for all sizes and channels of distribution."

33.     Under the American Classics License Agreement, American Classics marketed t-shirts bearing the USFL wordmark and logo, the United States Football League wordmark, and logos of constituent teams (the Heritage Team Marks as defined above in Paragraph 27) starting no later than November 2011, and by no later than September 2012, American Classics was marketing t-shirts with the logos of the league and the Heritage Team Marks of at least the following teams: Michigan Panthers, Birmingham Stallions, Boston Breakers, New Jersey Generals, Houston Gamblers, Pittsburgh Maulers, Memphis Showboats, and Philadelphia Stars.

34.     Under the American Classics License Agreement, American Classics continuously used the USFL and United States Football League word marks, the USFL logo, and the Heritage Team Marks in commerce from 2011 through 2022, with all goodwill in such marks inuring to the benefit of the Old League Rightsholders.  American Classics made regular royalty payments to the

Old League Rightsholders based on the sales volume of USFL-related t-shirts made by American Classics, which were sold via America Classics' online store (accessible at http://americanclassicsonline.com) and through the websites of third-party retailers.

35.     Some of the T-Shirts marketed by American Classics bore the logo of the Old USFL.  Below is an image of the league logo used by the Old USFL:



36.     And below is an image of a T-shirt marketed by American Classics bearing the USFL logo:



37.     Given the similarity between the old league logo and the new league logo, *see supra* ¶¶ 25 and 35, this complaint does not further distinguish between them.

38.     In addition, American Classics sold T-Shirts bearing logos used by the teams of the Old USFL—the Heritage Team Marks.  Below are images of t-shirts bearing the Heritage Team Marks manufactured and sold by American Classics pursuant to the American Classics License Agreement:



39.    Each of the eight teams in the New USFL is based on a team of a similar name that played in the Old USFL.  Plaintiff created an updated logo for each team, each of which is the subject of a pending trademark application with the USPTO (the "Modernized Team Marks").

40.    The table below shows the Heritage and Modernized Team Marks:



41.     In addition, Ehrhart undertook other activities using the league and team marks in commerce.  For example, in 2007, he hosted a reunion and golf tournament to commemorate the 25th anniversary of the Old USFL.  He also served as the face of the Old USFL in public appearances and interviews, including for an ESPN 30 for 30 documentary tiled *Small Potatoes: Who Killed the USFL?*, which was directed by three-time Emmy Award winner, Michael Tollin. That reunion and the *Small Potatoes* documentary prominently displayed the league marks and the Heritage Team Marks.

42.     Ehrhart also entered into several written licenses authorizing the use of the Old USFL's team and league marks.  This included granting to a former USFL player the rights to use the USFL name, logo, likeness, and game footage video in connection with two film projects, one in 2008 and one in 2010.

43.     The licensing activities described above were sufficient to maintain common law trademark rights in the word marks for "USFL" and "United States Football League," the design mark for the league logo, the word marks for team names, and the Heritage Team Marks for team logos with use in commerce dating back to at least 2011 when American Classics began marketing apparel bearing these marks.

44.     In or about February 2022, the Old League Rightsholders assigned all of their rights in the intellectual property related to the USFL and its constituent teams to The Real USFL, LLC, an entity that the Old League Rightsholders formed to hold their intellectual property rights.  In or about August 2022, in connection with the settlement of a lawsuit, The Real USFL, LLC assigned all those intellectual property rights to an entity called The Spring League, LLC, an entity that had been working with Plaintiff on the launch of the New USFL.  The Spring League, LLC later assigned those rights to Plaintiff.  A list of the marks included in that assignment is attached as Exhibit 1.  Plaintiff has priority in these common law trademarks dating back to, at the very latest, November 2011, when American Classics began marketing under the American Classics License Agreement.

45.     The assignment of the trademark rights to Plaintiff specifically included any and all league and team word and design marks that were sold on merchandise under the American Classics License Agreement, including the USFL and United States Football League word marks, the USFL logo mark, and word and logo marks for the Arizona Outlaws, Birmingham Stallions, Boston Breakers, Chicago Blitz, Denver Gold, Houston Gamblers, Jacksonville Bulls, LA Express, Memphis Showboats, Michigan Panthers, New Jersey Generals, Oakland Invaders, Philadelphia Stars, Pittsburgh Maulers, San Antonio Gunslingers, Tampa Bay Bandits, and Washington Federals.

46.     As a result of Plaintiff's acquisition of the rights in the word marks for "USFL" and "United States Football League," and its acquisition of the trademark rights for the league logo, and the word marks for team names and the Heritage Team Marks for team logos, Plaintiff is the current owner of all the rights in and to certain distinctive wordmarks and design marks for the USFL, including the word marks for "USFL" and "United States Football League," the league logo, and the word marks for the names and marks for the logos of its constituent teams including: the New Orleans Breakers, the Birmingham Stallions, the Memphis Showboats, the Houston Gamblers, the Pittsburgh Maulers, the Philadelphia Stars, the New Jersey Generals, the Michigan Panthers, and the Tampa Bay Bandits (collectively, the "USFL Marks").

**Plaintiff's Current marketing and sale of goods with USFL League and Team Marks**

47.     Plaintiff markets and sells a variety of goods, such as jerseys, t-shirts, sweatshirts, jackets, hats, and other collectibles (collectively, the "USFL Goods") directly through its website, http://www.shopusfl.com (the "Official USFL Shop"), as well as other online and/or brick-and-mortar retailers in and around stadiums that host its games.



48.     The USFL Goods are typically branded with both the USFL wordmark and/or USFL logo along with, to the extent the product is team-specific, the wordmark and/or design mark for the particular team that is the subject of that product.

49.     The USFL Goods are typically sold at a low to moderate price point (for example, ranging from approximately $40 to $60 for t-shirts, approximately $80 to $90 for jerseys, and approximately $27 to $35 for hats).

50.     Along with the Official USFL Shop, Plaintiff also has a licensing agreement with e-commerce store BreakingT, http://www.breakingt.com, through which BreakingT offers for sale t-shirts that are branded with some of the USFL Marks, including word marks and design marks for some of the New USFL's teams.

51.     Plaintiff also has continued a licensing agreement with American Classics.  Plaintiff licenses American Classics to sell t-shirts bearing the Heritage Team Marks, current team logos, team word marks, the word marks for "USFL" and the league logo.  Those good are offered nationwide through American Classics' website: http://americanclassicsonline.com/c/brands/usfl-brands/.

52.     In addition, in April 2023, Plaintiff announced that it had reached an agreement with Antigua Group, Inc. ("Antigua Apparel") for Antigua Apparel to be the official Authentic Sideline Apparel Partner for the USFL for its 2023 season.  As part of that deal, Antigua Apparel outfits all USFL coaching staffs with team logoed products that they wore during games this season.  Antigua Apparel is the first company to be named an official on-field partner for the New USFL.

53.     As a direct result of Plaintiff's substantial investment in the New USFL, including the advertising and marketing that it and its affiliates have done to grow interest in the new league, the public has come to recognize and associate the USFL Marks with Plaintiff.

54.     The distinctive USFL Marks and the USFL Goods offered under those marks have come to be associated in the minds of consumers with their exclusive source: Plaintiff.

**Defendants' Infringement, Counterfeiting, and Deceptive Marketing**

55.     503 Sports was formed by Alameda in Portland, Oregon in or around October, 2016 to sell replica Portland Mavericks jerseys, a minor league baseball team based in Portland, Oregon during the 1970s.

56.     In or around 2017, Alameda expanded 503 Sports to begin offering products via an online e-commerce site located at the domain http://www.503-sports.com.  503 Sports claimed to specialize in selling (1) custom team uniforms for local organizations like schools and little league, and (2) fan apparel for defunct sports teams.

57.     Sometime after launching the 503 Sports website, Defendants started selling products bearing spurious marks that are identical and/or confusingly similar to the Heritage Team Marks and USFL logo.

58.     In early 2021, Defendants adopted the trade name "Royal Retros," and moved  e-commerce operations from http://www.503-sports.com to Defendants' Website, http://www.royalretros.com/, which sells and ships goods "worldwide."

59.     Since Plaintiff announced the launch of the New USFL on June 3, 2021, Defendants have engaged in a concerted and deliberate effort to market and sell products in such a way to appear to be associated with the New USFL and to profit off Plaintiff's marks.

60.     Specifically, Defendants have marketed and sold products bearing the USFL word marks and team word marks and marks identical or confusingly similar to the USFL logo mark

and the Heritage Team Marks in an effort to profit from Plaintiff's efforts in connection with the New USFL. To that end, Defendants market their products bearing the USFL and team word marks and USFL logo mark and Heritage Team Marks through means designed to create the false impression among consumers that Defendant's products are associated with, licensed by, or otherwise approved by the New USFL.

61. Defendants currently offer for sale on Defendants' Website apparel emblazoned with the USFL word mark and USFL logo mark and with team wordmarks and Heritage Team Marks from constituent teams (collectively, the "Royal Retros Goods").



62. Defendants' manner of marketing their products and the prominence and volume of the USFL-related products on Defendants' Website is intended to create the false impression that Defendants' goods are associated with, licensed by, or otherwise approved by Plaintiff in several ways.

63.     Shortly after Plaintiff announced the launch of the New USFL on June 3, 2021, Defendants sought to capitalize on the goodwill Plaintiff was growing through the new league by expanding its then-limited offerings related to the teams of the Old USFL.  Customers who visited Defendants' new Website around June 2021 were greeted by a new, large banner using Plaintiff's trademarked USFL word mark and the USFL logo mark:



64.     Then, in or about February 2022—less than one month after Plaintiff announced that it would play all of its 2022 regular-season games in The Magic City, Birmingham, Alabama—Defendants launched what they call the "Real USFL Shop," which is dedicated to selling products bearing Plaintiff's USFL Marks.  Defendants, of course, have no official or authorized connection to either the Old USFL or the New USFL, the only extant football league bearing the name "USFL."

65.     On information and belief, tThe Real USFL Shop creates, and was intended to create, confusion among consumers by misleading them into thinking that Defendants' products are associated with, endorsed by, or otherwise approved by the only existing league bearing the name "USFL"—namely, Plaintiff's New USFL.

66.     Defendants announced the launch of their "Real USFL Shop" via 503 Sports's @RoyalRetros Twitter account, and others, and advertised to the consuming public their "Real USFL Shop" is "Where the players shop!"  This creates the false appearance that Defendants' Website is associated with the New USFL and that the New USFL's players get their apparel from Defendants' Website.  The only "players" currently associated with the USFL, of course, are Plaintiff's players.



67.     Since then, Defendants have leveraged the popularity and success of the New USFL to market their competing apparel, without licensing any of the USFL Marks from Plaintiff and without Plaintiff's consent.

68.     For example, when customers search for "USFL Shop" in search engines like Google, Defendants have coded their website so that the "Real USFL Shop" shows in search results as "The USFL Shop,"  giving the impression that their site is the New USFL's official distributor of authentic USFL branded gear.

69.     As a result of Defendants using the confusingly similar sounding name "The USFL Shop," which generally appears as one of the top search results when a customer searches for "USFL Shop," customers are diverted from Plaintiff's official store—http://www.shopusfl.com/—to Defendants' Website.

70.     When customers now visit Defendants' Website, they are greeted with a brazen trademark infringement.   The home page displays a large banner ad prominently featuring Plaintiff's trademarked USFL word mark and USFL logo, along with goods featuring the Heritage Team Marks, making the USFL Marks the centerpiece of Defendants' website presentation.



71.     Once customers click through the banner on Defendants' Website, and are directed to pages that display the USFL-branded products, the misleading tag line "***Where the players shop!***" again appears near the top of the page.



72.     As part of their efforts to market and sell the Royal Retros Goods to consumers, Defendants rely on social media, including Twitter and Instagram accounts under the handles @RoyalRetros, @Royal.Retros and/or @UsflShop (collectively, the "Social Media Profiles"). The handle @UsflShop is intended to be, and is, confusingly similar to Plaintiff's website, http:///www.shopusfl.com.   By using the confusingly similar @UsflShop, Defendants use their Social Media Profiles to deceive customers and divert sales from Plaintiff's Official USFL Shop, http://www.shopusfl.com.

73.     Defendants created their Instagram account for @UsflShop only two months before the New USFL was scheduled to play its first game and sought to capitalize on the interest surrounding the launch of the league.   Their Instagram account similarly includes the phrase "Where the players shop!" to further create the false appearance that the New USFL's players are authorized to get their apparel from Defendants' Website.



74.     On April 18, 2023, Defendants posted a photograph to the @royal.retros Instagram account of an individual, who, upon information and belief is associated with Defendants, posing with the Birmingham Stallions mascot.  In that post both the individual and the mascot are wearing

Birmingham Stallions branded apparel.  The caption claims that "All #USFL items in this photo are available at RoyalRetros.com *Not the Horse."



75.     The shirt worn by the mascot, however, includes Plaintiff's Modernized Team Mark for the Birmingham Stallions logo created by Plaintiff specially for its New USFL and is the subject of one of Plaintiff's numerous trademark applications with the USPTO, including USPTO Application No. 97135263.  It *cannot* be purchased on Defendants' Website and is available only through Plaintiff's official sources.  Still, Defendants intentionally misled customers into believing that all of the products in the post —including Plaintiff's products—are available from Defendants.

76.     Defendants also advertise to consumers that they sell jerseys with the names of current USFL players on the backs.  This includes Birmingham Stallions player Phillip "Scooby" Wright.  Defendants also sold a Philadelphia Stars Bryan Scott number 18 jersey.  The customer who bought the item posted photos to Twitter, tagged both Bryan Scott's Twitter account handle @BryanScottQb, and Plaintiff's official Philadelphia Stars account handle @USFLStars.

77.     Defendants also sold to at least one customer a Houston Gamblers jersey with the name Bahar and the number 11, for current Houston Gamblers player Kenji Bahar, along with a

Philadelphia Stars number 10 jersey, for current player Case Cookus.  Photos of these jerseys were posted to Twitter by the customer, and retweeted by one or more of the Social Media Profiles.

78.     To further the false association with the New USFL, most of Defendants' jerseys include a tag affixed to the front, near the bottom, bearing the Plaintiff's USFL word mark, USFL logo, and United States Football League word mark.



79.     In place of or in addition to this tag, certain of Defendants' jerseys include the USFL word mark and logo affixed on the front of the jersey beneath the collar.  The uniforms used by players in the Old USFL did not have a USFL logo in this location.  The use of the logo in that location is original to uniforms used by players on the field in the New USFL and Defendants' use of the USFL logo in this way is designed to create a false association between its products and the New League and Plaintiff's marks.

80.    Marketing such jerseys using Plaintiff's trademarks, including the USFL word mark, USFL logo, Heritage Team Marks and wordmarks for each of the New USFL's teams, further creates the impression in the mind of a reasonable consumer that Defendants are associated with, licensed by, or otherwise approved by Plaintiff and/or the New USFL.

81.    For each of the Royal Retros Goods offered for sale by Defendants, the individual product pages claim that: "This product is official merchandise of the USFL Royal Retros brand."

82.    Defendants' use of the words "official merchandise" is intended to confuse and does confuse customers by creating the impression that these items are officially licensed by Plaintiff and/or affiliated with the New USFL.

83.    In addition to jerseys, Defendants offer for sale t-shirts and sweatshirts that use Plaintiff's USFL word mark and USFL logo.  These products directly compete with similar, authentic goods offered by Plaintiff through its Official USFL Shop.

84.    In the example below, a nearly identical t-shirt is offered for sale by Defendants that includes the USFL logo and wordmark and is priced at five dollars less than Plaintiff's official t-shirt.  The shirt is also nearly identical to one sold starting in 2013 to 2022 by American Classics under a licensing agreement with Plaintiff's predecessor in interest.



| Official USFL Product from Official USFL Shop | Defendants' Royal Retros Product | American Classics Licensed Heritage Mark, 2013 |

85.     Defendants also offer apparel such as t-shirts that use team marks identical and/or confusingly similar to the Heritage Team Marks owned by Plaintiff, with exclusive trademark rights for apparel dating back to at least 2011.   The Heritage Team Marks were licensed by Plaintiff's predecessor in interest to American Classics and American Classics sold T-shirts bearing the Heritage Team Marks under that agreement from at least 2012 to 2022.   And Plaintiff currently licenses American Classics to sell t-shirts with the Heritage Team Marks.



| Official USFL Product from Official USFL Shop | Defendants' Royal Retros Product | American Classics Licensed Heritage Mark, 2012 |

86.     Defendants are keenly aware of the pricing offered through Plaintiff's official channels and routinely include in their social media advertising assertions that their jerseys are "$5 less than that other store."

87.     Defendants also offer for sale jerseys that use the designs, colors, and logos of USFL teams that were in use during the Old USFL's original run from 1983 to 1985, including, for example, a Memphis Showboats jersey in number 92, the jersey and number worn by Reggie White; a New Jersey Generals jersey in number 34, the jersey and number worn by Herschel Walker; and a Houston Gamblers Jersey in number 12, the jersey and number worn by Jim Kelly.

88.     In addition to historical "throwback" jerseys, Defendants also sell jerseys and other apparel for USFL teams using color palettes and uniform designs that those teams never used during the original run of the Old USFL from 1983 to 1986.  These versions of the apparel mimic unique new color palettes, stripe patterns, and/or color blocking that Plaintiff recently created for the teams in the New USFL.

89.     On Defendants' website, the new design patterns are often paired with Heritage Team Marks, yet are clearly intended to capitalize on and exploit Plaintiff's efforts and expenses in launching the New USFL.  These color palettes and designs used on these uniforms were only recently created in connection with Plaintiff's New USFL.  Yet Defendants market these products as part of its "Remix" collection, which are advertised as "The original logos with a modern look!":



90.    In each case, the actual uniform design, including stripe patterns, color blocking, and number fonts mimics the uniform used by the teams in the New USFL, and Defendants' deliberate use of these design elements is intended to (1) create an association in the minds of consumers between Defendants' products and Plaintiff's New USFL, and (2) take for themselves sales of products that would otherwise be made by Plaintiff.

91.    By mimicking the color schemes and designs that Plaintiff currently uses for its teams, and which were never used by the Old USFL, and combining those color schemes and designs with unauthorized use of Heritage Team Marks and the USFL word mark and USFL logos, Defendants are attempting to capitalize on the market for USFL apparel that matches the uniforms currently seen on the field on Plaintiff's teams in the New USFL.

92.    For example, Defendants' use of a "Remix" collection infringes on Plaintiff's rights for apparel sold for the Pittsburgh Maulers.  The Maulers' uniforms used a purple and orange palette during the Old USFL run and the first season of the New USFL.  For the second season of the New USFL, however, the Maulers are using an entirely new black and gold color scheme.

Similarly, the Memphis Showboats, a new team for the 2023 season for the New USFL, wore red and gray uniforms during the Old USFL run.  For the 2023 New USFL season, they are wearing navy and gold.

93.    Defendants advertise the availability of both the "classic" and "modern" looks for, *inter alia*, the Pittsburgh Maulers ("classic" in the original purple and orange color scheme and "modern" in the new black and gold color scheme) and the Memphis Showboats ("classic" in the red and gray color scheme and "modern" in the new navy and gold color scheme), as well as the New Jersey Generals, and Philadelphia Stars.  All of Defendants' "classic" jerseys also include a tag near the bottom of the jersey that appears to brand the jerseys with Plaintiff's USFL logo, USFL word mark, and United States Football League word mark.

94.    These items directly compete with similar, authentic goods offered by Plaintiff through its Official USFL Shop, and are offered at price points similar to, but less than, those on Plaintiff's site.



Pittsburgh Maulers '23 Adult Replica Jersey

$89.99



Pittsburgh Maulers USFL Remix Jersey
$84.99



Memphis Showboats '23 Adult Replica Jersey

$89.99

Memphis Showboats USFL Remix Jersey
$84.99

Official USFL Products from the Official USFL Shop          Defendants' Royal Retros Products

95.     Defendants have branded certain of their items as a "sideline jacket," to create the impression that its products are officially licensed merchandise from the New USFL that Plaintiff has authorized its players to wear on the sidelines during New USFL games:



Birmingham Stallions USFL Sideline Jacket
$79.99

Memphis Showboats USFL Remix Sideline Jacket
$79.99

Pittsburgh Maulers USFL Remix Sideline Jacket
$79.99

96.     None of these items is licensed or authorized by Plaintiff and none can be sold as a sideline jacket to be worn on the sidelines of Plaintiff's New USFL games.   Indeed, Plaintiff markets and sells its own "authentic sideline collection" via its own Official USFL Shop, the only approved and authentic sideline apparel for the New USFL.

97.     Defendants have also used the buzz surrounding key events for the New USFL to market Royal Retros goods in such a way to create the appearance that Defendants' products are official USFL merchandise that is affiliated with and/or licensed by Plaintiff.

98.     For example, as the first New USFL season began in April 2022, Defendants celebrated kick-off by posting a "Welcome Back, #USFL" message via its Instagram account, tagging its own @usflshop account, and directing consumers to Defendants' Website, rather than Plaintiff's Official USFL Shop.

99.     Defendants also celebrated the launch of Plaintiff's USFL by distributing commemorative towels that included the words "2022 USFL Inaugural Game Birmingham, Alabama," used Plaintiff's trademarked USFL word mark and USFL logo, and the domain name for Defendants' Website, all creating the false impression that Defendants are affiliated with Plaintiff or otherwise authorized to sell licensed apparel with the USFL Marks.

100.    In June 2022, before the New USFL's first weekend of playoffs, Defendants advertised hats for each of the four teams playing in the playoffs and offered a twenty percent discount in anticipation of that weekend's games.  Each of the hats offered for sale used the Heritage Team Marks owned by Plaintiff for each of the teams competing in the New USFL playoffs:



101.    After the Birmingham Stallions won the New USFL's inaugural championship game, Defendants tweeted a congratulatory message tagging Plaintiff's Twitter account for the Birmingham Stallions, @USFLStallions, along with a link to Defendants' competing products. The products offered for sale by Defendants and featured in that message include the use of the Heritage Team Mark for the Birmingham Stallions:



102.    Since the 2023 USFL season kicked off in April 2023, Defendants have persisted in their efforts to infringe on Plaintiff's trademarks and market goods in a manner that creates the false impression of an association with the New USFL.

103.    In February 2023, Defendants began marketing "New items for preorder" with the assurance that they would be "delivered before the season starts!" clearly referencing Plaintiff's New USFL.  The products featured in that message included Heritage Team Marks for the Houston Gamblers, New Jersey Generals, Michigan Panthers, and Pittsburgh Maulers, along with Plaintiff's new black-and-yellow color scheme for the Pittsburgh Maulers.



104.    Since the start of the 2023 USFL Season, Defendants have expanded their goods and now offer for sale nearly 124 different items branded with the USFL Marks.  These offerings include jerseys, hats, jackets, and t-shirts, all of which purport to be official USFL gear.

105.    Defendants' use of Plaintiffs' marks stands in stark contrast to Defendants' use of other marks for other leagues.  Although Defendants market products with the logos of current and

defunct teams from other major sports leagues, for those products Defendants try to disclaim any affiliation with the teams or leagues and include one of two disclaimers: (1) "This product is a historical representation of the defunct team in the description. The product is in no way affiliated with any existing team, league or other organization" or (2) "The product is in no way affiliated with any existing team, league or other organization."

> *This product is a historical representation of the defunct team in the description. The product is in no way affiliated with any existing team, league or other organization.*

106.    The absence of any similar disclaimer on the pages for any goods that use USFL Marks similarly creates confusion among consumers, and leads consumers to believe that Defendants' products are affiliated with and/or licensed by Plaintiff and the New USFL. It also shows that Defendants' actions are willful and intentional.

107.    On February 8, 2022, counsel for Plaintiff informed Defendants in writing of Plaintiff's trademark rights in the USFL Marks and asked Defendants to cease and desist their infringing conduct. Plaintiff's counsel explained that Defendants' use of the USFL Marks would cause confusion and lead consumers to believe that Royal Retros apparel is licensed by Plaintiff or that 503 Sports is affiliated with or sponsored by Plaintiff.

108.    From February 8, 2022, through March 11, 2022, Plaintiff and Defendants engaged in consistent negotiations regarding the possibility of Plaintiff granting Defendants a license to use the USFL Marks. Defendants ultimately broke off those discussions.

109.    Despite having been warned that its actions infringed Plaintiff's rights to the USFL Marks, Defendants have continued their infringing conduct and have continued to market their products in a manner that creates the false impression that they are associated with or licensed or approved by the New USFL.

**Defendants' Wrongful Conduct Has Caused Harm And Risks Future Harm**

110.    The Royal Retros Goods are low to moderately priced, offered for sale through Defendants' Website, and are targeted towards the same consumers searching for jerseys and other apparel for the New USFL football league and its constituent teams as would be searching for these items through Plaintiff's Official USFL Shop.

111.    Plaintiff has no relationship or affiliation with Defendants and did not consent to the use of its trademarks in connection with the Royal Retros Goods.  To the contrary, Plaintiff expressly told Defendants to cease and desist their use of USFL Marks.

112.    Defendants' use of the USFL Marks including the word mark for "USFL," the USFL logo, and the word marks for team names and Heritage Team Marks on Defendants' Website and their social media profiles, and anywhere else these infringing products are advertised or sold, falsely misrepresents that Defendants are associated with Plaintiff.

113.    Defendants' use of the USFL Marks including the word mark for "USFL" the USFL logo, and the word marks for team names and Heritage Team Marks as set forth here confuses and deceives customers into believing that they are purchasing officially licensed USFL Goods, when they are actually purchasing imitations, knockoffs, and/or counterfeits, and causes consumers to mistakenly believe that there is an affiliation between the Royal Retros Goods and Plaintiff.

114.    Given the similarity between trade channels and target customers for both the Royal Retros Goods and the USFL Goods, the same consumers will likely encounter both the goods supplied by Plaintiff and the goods supplied by Defendants.

115.    Defendants' actions have created confusion in the marketplace.  This confusion has harmed, and will continue to harm, Plaintiff's goodwill and business reputation while also causing Plaintiff to suffer actual damages including, but not limited to, lost sales.

116.    Moreover, Plaintiff cannot ensure Defendants' infringing goods are manufactured to the same quality or durability standards as its own products offered through officially licensed manufacturers, creating the risk of a bad consumer experience that infects not only that consumer experience, but any future purchases of other products sold under the USFL brand.

117.    The confusion created by Defendants between their Royal Retros Goods and Plaintiff's USFL Goods is ongoing and continuing, compounding the harm to Plaintiff.

**FIRST CLAIM FOR RELIEF**
(Trademark Infringement Under 15 U.S.C. § 1114)

118.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 117 as if fully set forth herein.

119.    Plaintiff owns valid trademark rights in the following registered trademarks listed on the Principal Register of the U.S. Patent and Trademark Office:  USFL (4,165,542, 4,808,689, 7,081,266, and 7,081,686), UNITED STATES FOOTBALL LEAGUE (6,774,782), BIRMINGHAM STALLIONS (7,076,162), MEMPHIS SHOWBOATS (7,075,895), NEW ORLEANS BREAKERS (7,081,265).

120.    Defendants' use of the USFL Marks without the authorization or consent of Plaintiff in connection with the offering for sale, sale, and distribution of the Royal Retros Goods constitutes a use in interstate commerce that is likely to cause confusion, deception, and mistake by buyers and the consuming public.

121.    Defendants' acts create a likelihood that a false and unfair association will be made between 503 Sports, the Royal Retros Goods, and Plaintiff, so that customers are likely to believe that the Royal Retros Goods are authentic USFL Goods, that 503 Sports is authorized by Plaintiff to sell USFL Goods, that the public is purchasing the USFL Goods when they are actually

purchasing the Royal Retros Goods, and/or that 503 Sports and the Royal Retros Goods are otherwise affiliated with or sponsored by Plaintiff.

122.    Defendants' acts constitute trademark infringement under 15 U.S.C. § 1114.

123.    Upon information and belief, Defendants have acted intentionally, maliciously, willfully, and in bad faith to deceive buyers into purchasing products from 503 Sports based on the false belief that those products are genuine USFL Goods, that 503 Sports is authorized by Plaintiff to sell the Royal Retros Goods, and/or that 503 Sports and the Royal Retros Goods are otherwise affiliated with or sponsored by Plaintiff, and with the specific intent to appropriate to Defendants and to employ for their own benefit the valuable goodwill and business reputation represented by the USFL Marks.

124.    Defendants' acts have caused and, if allowed to continue, will cause Plaintiff to suffer substantial irreparable harm in the nature of loss of control over its reputation and loss of consumer goodwill, and Plaintiff has no adequate remedy at law.

125.    As a result of the foregoing, Plaintiff has suffered actual damages and Defendants have been unjustly enriched.

126.    Defendants' actions have been extraordinary, willful, and in bad faith entitling Plaintiff to treble damages, attorneys' fees, and cost of suit, and to such other and different relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
(Trademark Infringement, Unfair Competition, And
False Designation Of Origin Under 15 U.S.C. § 1125(a)(1)(A))

127.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 126 as if fully set forth herein.

128.    Plaintiff owns valid trademark rights in the USFL Marks.

129.    Defendants' use of the USFL Marks without authorization on the Royal Retros Goods constitutes use in interstate commerce that is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiff, such that consumers may believe that Royal Retros Goods are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Plaintiff.

130.    Defendants' acts constitute trademark infringement, false designation of origin, and unfair competition in violation of section 43(a) of the Lanham Act,15 U.S.C. § 1125(a).

131.    Upon information and belief, Defendants have acted intentionally, maliciously, willfully, and in bad faith for the purposes of deceiving buyers into purchasing products from 503 Sports based on the false belief that those products are genuine USFL Goods, that 503 Sports is authorized by Plaintiff to sell the Royal Retros Goods, and/or that 503 Sports and the Royal Retros Goods are otherwise affiliated with or sponsored by Plaintiff, and with the specific intent to appropriate to Defendants and to employ for their own benefit the valuable goodwill and business reputation represented by the USFL Marks.

132.    Defendants' acts have caused and, if allowed to continue, will continue to cause Plaintiff to suffer substantial irreparable harm in the nature of loss of control over its reputation and loss of consumer goodwill, and Plaintiff has no adequate remedy at law.

133.    As a result of the foregoing, Plaintiffs has suffered actual damages and Defendants have been unjustly enriched.

134.    Defendants' actions have been extraordinary, entitling Plaintiff to treble damages, attorneys' fees, and cost of suit, and to such other and different relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (Trademark Dilution 15 U.S.C. § 1125(c)(1))

135.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

136.    Plaintiff owns valid trademark rights in the USFL Marks.

137.    The USFL Marks are famous and distinctive within the meaning of Section 43(c) of the Lanham Act § 1125(c).

138.    The USFL Marks, including the Heritage Team Marks, are distinctive marks that have been in use for many years and play a prominent role in the Old USFL's historical and cultural relevance in professional sports and entertainment.

139.    The USFL Marks, including the Heritage Team Marks, were famous long before Defendants began using unauthorized reproductions, counterfeits, copies and colorable imitations of the USFL Marks on the Royal Retros Goods.

140.    Defendants' use of the USFL Marks without authorization on the Royal Retros Goods constitutes use in interstate commerce that is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiff, such that consumers may believe that Royal Retros Goods are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Plaintiff.

141.    Defendants' use of the USFL Marks dilutes and/or is likely to dilute the distinctive quality of those marks and to lessen the capacity of such marks to identify and distinguish Plaintiff's goods.  Defendants' unlawful use of the USFL Marks trademarks is likely to cause blurring in the minds of consumers between Plaintiff and the Defendants, thereby lessening the value of the USFL Marks as unique identifiers of Plaintiff's goods.

142.    Defendants' acts constitute trademark dilution in violation of section 43(c) of the Lanham Act,15 U.S.C. § 1125(c)(1).

143.    Upon information and belief, Defendants have acted intentionally, maliciously, willfully, and in bad faith for the purposes of deceiving buyers into purchasing products from 503 Sports based on the false belief that those products are genuine USFL Goods, that 503 Sports is authorized by Plaintiff to sell the Royal Retros Goods, and/or that 503 Sports and the Royal Retros Goods are otherwise affiliated with or sponsored by Plaintiff, and with the specific intent to appropriate to Defendants and to employ for their own benefit the valuable goodwill and business reputation represented by the USFL Marks.

144.    Defendants' acts have caused and, if allowed to continue, will continue to cause Plaintiff to suffer substantial irreparable harm in the nature of loss of control over its reputation and loss of consumer goodwill, and Plaintiff has no adequate remedy at law.

145.    As a result of the foregoing, Plaintiffs has suffered actual damages and Defendants have been unjustly enriched.

146.    Defendants' actions have been extraordinary, entitling Plaintiff to treble damages, attorneys' fees, and cost of suit, and to such other and different relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
(Trademark Counterfeiting 15 U.S.C. § 1114(c))

147.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 146 as if fully set forth herein.

148.    Plaintiff owns valid trademark rights in the Registered Marks, which are listed on the Principal Register of the U.S. Patent and Trademark Office: USFL (4,165,542, 4,808,689, 7,081,266, and 7,081,686), UNITED STATES FOOTBALL LEAGUE (6,774,782),

BIRMINGHAM STALLIONS (7,076,162), MEMPHIS SHOWBOATS (7,075,895), NEW ORLEANS BREAKERS (7,081,265).

149.    Defendants' use of the spurious designations that are identical to, or substantially indistinguishable from, the USFL Marks without the authorization or consent of Plaintiff in connection with the sale, offering for sale, and distribution of the Royal Retros Goods constitutes a use in interstate commerce that is likely to cause confusion, deception, and mistake by buyers and the consuming public.

150.    Defendants' use of the spurious designations as set forth above creates a likelihood that a false and unfair association will be made between 503 Sports, the Royal Retros Goods, and Plaintiff, so that the purchasing public is likely to believe that the Royal Retros Goods are authentic USFL Goods, that 503 Sports is authorized by Plaintiff to sell USFL Goods, that the public is purchasing the USFL Goods when they are actually purchasing the Royal Retros Goods, and/or that 503 Sports and the Royal Retros Goods are otherwise affiliated with or sponsored by Plaintiff.

151.    Defendants' use of the spurious designations as set forth above is likely to result in Defendants unfairly benefitting from Plaintiff's advertising and promotion, and unfairly profiting from the reputation of Plaintiff and the USFL Marks all to the substantial and irreparable injury to the public, Plaintiff, and the USFL Marks, and the substantial goodwill represented thereby.

152.    Defendants' acts constitute trademark counterfeiting under 15 U.S.C. § 1114.

153.    Upon information and belief, Defendants have acted intentionally, maliciously, willfully, and in bad faith to deceive buyers into purchasing products from 503 Sports based on the false belief that those products are genuine USFL Goods, that 503 Sports is authorized by Plaintiff to sell the Royal Retros Goods, and/or that 503 Sports and the Royal Retros Goods are otherwise affiliated with or sponsored by Plaintiff, and with the specific intent to appropriate to

Defendants and to employ for their own benefit the valuable goodwill and business reputation represented by the USFL Marks.

154.    Plaintiff is entitled to injunctive relief and is also entitled to damages as provided by 15 U.S.C. §1117(c), or at Plaintiff's election, an amount representing three (3) times Plaintiff's damages or Defendants' illicit profits, and Plaintiff's costs and attorneys' fees under 15 U.S.C. § 1117.

## FIFTH CLAIM FOR RELIEF
(Trademark Infringement Under N.Y. Gen. Bus. Law § 360-k)

155.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 154 as if fully set forth herein.

156.    Defendants' use of the Heritage Team Marks and USFL Marks in connection with the offering for sale, sale, and distribution of consumer products in this judicial district and elsewhere has caused or is likely to cause confusion, mistake and/or deception as to the source or origin, sponsorship, or approval of Defendants and/or the Royal Retros Goods in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that 503 Sports is associated with or related to Plaintiff, that 503 Sports is authorized by Plaintiff to offer the Royal Retros Goods, and that 503 Sports and the Royal Retros Goods are otherwise affiliated with or sponsored by Plaintiff.

157.    Defendants' use of the Heritage Team Marks and USFL Marks in connection with the advertising, promotion, distributing, offering for sale, and sale of the Royal Retros Goods is not authorized by Plaintiff.

158.    Defendants' acts injure Plaintiff's image and reputation with consumers in this judicial district and elsewhere in the United States by, *inter alia*, creating confusion about, and

potential consumer dissatisfaction with, Plaintiff, the Heritage Team Marks, the USFL Marks, and/or the USFL Goods.

159.    Given Defendants' acts alleged herein constitute trademark infringement of the USFL Marks in violation of section 360-k of New York General Business Law.

160.    Defendants' acts have caused and, if allowed to continue, will cause Plaintiff to suffer substantial irreparable damage and injury, and Plaintiff has no adequate remedy at law.

161.    As a result of the foregoing, Plaintiff has lost profits, and Defendants have been unjustly enriched.

### SIXTH CLAIM FOR RELIEF
(State Trademark Dilution And Injury Under N.Y. Gen. Bus. Law § 360-*l*)

162.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

163.    Defendants' acts are likely to cause dilution of the distinctive quality of Plaintiff's valuable USFL Marks and Heritage Team Marks.  In addition, Defendants' acts are likely to injure Plaintiff's business reputation and such injury will continue unless such acts are enjoined by this Court.

164.    Defendants' acts constitute trademark dilution under section 360-*l* of New York General Business Law.

165.    Defendants' acts have caused and, if allowed to continue, will cause Plaintiff to suffer substantial irreparable damage and injury, and Plaintiff has no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF
(Trademark Infringement Under New York Common Law)

166.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 165 as if fully set forth herein.

167.    Defendants' acts are likely to confuse and deceive the public into believing that the Royal Retros Goods advertised, promoted, offered for sale, distributed, and sold by 503 Sports under the USFL Marks are authentic USFL Goods, that 503 Sports is authorized by Plaintiff to sell USFL Goods, that the public is purchasing USFL Goods when they are actually purchasing Royal Retros Goods, and/or that Defendants and the Royal Retros Goods are otherwise affiliated with or sponsored by Plaintiff.

168.    Defendants, by the acts described here, have competed unfairly with Plaintiff and have otherwise used the valuable reputation and goodwill of Plaintiff, the Heritage Team Marks, and the USFL Marks to promote and unfairly benefit from the sale of the Royal Retros Goods. Defendants are unfairly benefiting from the goodwill in the USFL Goods and reaping benefits from the fruits of Plaintiff's efforts and considerable investment.

169.    Defendants' acts constitute trademark infringement at common law.

170.    As a direct and proximate result of Defendants' acts, Plaintiff has suffered irreparable harm, and unless Defendants are restrained from continuing their wrongful acts, the harm to Plaintiff will continue, and Plaintiff has no adequate remedy at law.

171.    As a result of the foregoing, Plaintiff has suffered actual damages, and Defendants have been unjustly enriched.

### EIGHTH CLAIM FOR RELIEF
(Unfair Competition and False Designation of Origin
Under New York Common Law)

172.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 171 as if fully set forth herein.

173.    Defendants' use of the Heritage Team Marks and the USFL Marks in connection with the offering for sale, sale, and distribution of the Royal Retros Goods has caused or is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of

503 Sports with Plaintiff, and/or as to the source, sponsorship, or approval of 503 Sports or the Royal Retros Goods, in that purchasers and other consumers in this judicial district and elsewhere in the United States are likely to believe that 503 Sports is associated with or related to Plaintiff, that 503 Sports is authorized by Plaintiff to provide consumer products under the confusingly similar "USFL ROYAL RETROS" name, and/or that 503 Sports and the Royal Retros Goods are otherwise affiliated with or sponsored by Plaintiff.

174.    Defendants' advertising and promotion of the Royal Retros Goods falsely designates the source of its goods in a manner that is likely to cause confusion, mistake, or deception among consumers as to the origin, sponsorship, or approval of these goods.

175.    Defendants' acts alleged herein constitute unfair competition and false designation of origin in violation of New York common law.

176.    Defendants' acts have caused and, if allowed to continue, will cause Plaintiff to suffer substantial irreparable damage and injury, and Plaintiff has no adequate remedy at law.

177.    As a result of the foregoing, Plaintiff has suffered actual damages, and Defendants have been unjustly enriched.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor as follows:

A.    That 503 Sports and its subsidiaries, parent(s), related companies, officers, directors, agents, servants, employees, warehousemen, warehousers, distributors, attorneys, successors and assignees, and all persons in active concert or participation with any of them, be permanently enjoined and restrained from:

i.    Marketing, promoting, advertising, manufacturing, producing, or selling products bearing any of the USFL Marks or Heritage Team Marks;

ii.   Using, imitating, or copying Plaintiff's Heritage Team Marks, USFL Marks or any words confusingly similarly thereto, as a trademark, tradename, brand, domain, name, social media handle, metatag, or in any hidden data including, but not limited to, any Internet search tool, or otherwise in connection with the advertising, display, sale, offering for sale, importing, repairing, refurbishing, or distribution of any products or inventory in any medium, including, but not limited to, online or retail sales;

iii.   Making any implied or express statements that are likely to cause consumers to believe that the Royal Retros Goods originate from Plaintiff, or are associated with, or endorsed or sponsored by Plaintiff, or that Plaintiff and Defendants are related to one another, in connection with marketing, promoting, advertising, selling, or distribution of any of 503 Sports's goods or services;

iv.   Using as a name or mark "USFL" or any variation thereof;

v.   Using in the future any name, mark or false designation of origin, or false description, or performing any act which can, or is likely to, lead members of the public to believe that any service or product provided by Defendants is in any manner associated or connected with Plaintiff, or is sold, licensed, sponsored, approved, or authorized by Plaintiff;

vi.   Engaging in any activity constituting unfair competition with Plaintiff, or constituting an infringement of Plaintiff's trademarks or trade names, or committing any other act that may lead purchasers to a false belief that Defendants' goods or services are sold or produced under the control and

supervision of Plaintiff, or are sponsored by, approved by, or connected with or guaranteed by Plaintiff;

    vii.    Further infringing the Heritage Team Marks or USFL Marks and damaging Plaintiff's goodwill and business reputation.

B.    That Defendants be required to account for all inventory or merchandise and other materials bearing the Heritage Team Marks, USFL Marks, or any marks confusingly similar to the USFL Marks and that they be required to destroy that inventory or provide it to Plaintiff.

C.    That Defendants be required to make an accounting of all profits, gains, and advantages that Defendants have derived as a result of their unlawful conduct.

D.    That Defendants be required to pay to Plaintiff, in accordance with 15 U.S.C. § 1117(a) and (b), and all other applicable state laws, such damages as Plaintiff has suffered in consequence of Defendants' infringement of the USFL Marks and from the above-described acts of misrepresentation, unfair competition, false designation, and unfair trade practices, including but not limited to the following:

    i.    Three times all gains and profits derived by Defendants from the above-described acts of misrepresentation, trademark infringement, unfair competition, false advertising, and unfair trade practices, or, in the alternative, three times Plaintiff's lost profits, whichever is greater;

    ii.    Statutory damages in the amount of $2,000,000 per infringement pursuant to 15 U.S.C. § 1117(c);

    iii.    Reasonable attorneys' fees and cost of suit incurred in this action; and

    iv.    Punitive damages as provided for under applicable federal and state law.

E.     Awarding Plaintiff such other and different relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Dated: New York, New York
       July 26, 2023

ELLIS GEORGE CIPOLLONE
O'BRIEN LLP

By:____s/Brett D. Katz_____
       Brett D. Katz
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone:  (212) 413-2600
Facsimile:  (212) 413-2629
bkatz@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN LLP
Patrick F. Philbin (*Pro hac vice forthcoming*)
John V. Coghlan (*Pro hac vice forthcoming*)
1155 F Street, NW, Suite 750
Washington, DC 20004
Telephone:  (202) 249-6900
Facsimile:  (202) 249-6899
pphilbin@egcfirm.com
jcoghlan@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN LLP
Keith J. Wesley (*Pro hac vice forthcoming*)
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:  (310) 275-5697
kwesley@egcfirm.com

*Attorneys for Plaintiff*